UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JETBLUE AIRWAYS CORPORATION, | : : : : : : : : : : : : : | Case No. 12cv5847 |
| Plaintiff, | | |
| v. | | |
| HELFERICH PATENT LICENISNG, LLC, | | |
| Defendant. | | |

**REPLY IN SUPPORT OF MOTION TO
DISMISS OR TRANSFER**

Defendant Helferich Patent Licensing, LLC ("Helferich") respectfully submits this reply in support of its Motion to Dismiss or Transfer. Plaintiff JetBlue Airways Corporation ("JetBlue") fails to establish personal jurisdiction over Helferich, relying on inadequate contacts with the forum, and applying incorrect legal standards. Contrary to JetBlues' efforts to insult Helferich and bias this Court with repeated references to Helferich as a "troll," name calling does not alter the legal standard for jurisdiction. *See Key Source Int'l v. Ceecolor Industries, Inc.*, 2012 WL 6001059 *1 (N.D. Cal 2012) (dismissing action allegedly brought to disperse "cloud created by 'patent trolling'" for lack of personal jurisdiction). This action should be dismissed. In the alternative, regardless of JetBlue's choice of forum or the convenience of the parties, the

2

action could be transferred to the Northern District of Illinois in the interests of justice and judicial efficency.

## I. HELFERICH IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

As a preliminary matter, JetBlue must establish jurisdiction under New York's long arm statute. There are two ways to establish personal jurisdiction: general and specific. In New York, those are governed by §§ 301 and 302, CPLR, respectively. Under § 301, a foreign defendant must be present by virtue of a systematic and continuous course of doing business. Under § 302, fewer contacts are required, but there must be a nexus – the cause of action must arise out of the contacts. *See Reyes v. Sanchez-Pena,* 191 Misc. 2d 600, 612-13, 742 N.Y.S.2d 513, 523 (N.Y.S.Ct. 2002) (discussing *McGowan v. Smith*, 52 N.Y.2d 268 (1981)). Curiously, JetBlue appears to concede that there is not specific jurisdiction over Helferich, but maintains that there is nonetheless general jurisdiction. JetBlue is mistaken.

### A. Helferich is Not Subject to Specific Jurisdiction

As discussed in the Motion, § 302(a)(1) requires that Helferich transact business in the state or contract to supply goods or services in New York, and that the cause of action arises out of that activity. For purposes of § 302, only Helferich's contacts with JetBlue are relevant – a much narrower test than the limits of specific jurisdiction under the Constitution. *Graphic Controls Corp. v. Utah Medical Products, Inc.*, 149 F.3d 1382, 1387 (Fed. Cir. 1998). Here, Helferich's contacts with JetBlue consist of a notice letter, a few emails, and one telephone call. This clearly cannot and does not suffice to establish jurisdiction. *See id.; see also Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785, 789-90 (Fed. Cir. 2011)(notice letter, emails and correspondence over several months, a non-disclosure agreement, and a meeting in the forum state did not establish specific jurisdiction for a declaratory judgment action).

## B. Helferich is Not Subject to General Jurisdiction

Section 301 requires that Helferich be found to be "doing business" in New York in such a systematic fashion that the exercise of general jurisdiction is appropriate. To establish general jurisdiction, the defendant's connections must show "continuous, permanent and substantial activity in New York," generally including "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and presence of employees or agents in New York." *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1991).

In support of its argument that general jurisdiction lies, JetBlue relies on the following: Helferich has sent letters to New York companies; Helferich has entered into non-exclusive license agreements with New York companies; Helferich has had no more than 5 licensing meetings with New York companies in over 6 years; Helferich has sued New York companies in Illinois; and Helferich's counsel has travelled to New York on three occasions in nearly four years for depositions in connection with the Illinois' litigations. None of this, individually or collectively, constitutes the "fair measure of permanence and continuity" required for general jurisdiction. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985).

As noted above regarding specific jurisdiction, sending notice letters to potential infringers is not an adequate basis for specific jurisdiction, let alone general jurisdiction. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1360-61 (Fed. Cir. 1998) ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum"). Helferich's contacts with New York companies are a far cry from the "persistent, vexing communications" from *counsel located in New York* found to create *specific* jurisdiction in *PDK*

3

*Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir. 1997). Even combined with the few trips to New York for license negotiations, Helferich's licensing efforts are merely sporadic and insubstantial contacts with the forum. *See Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1017-18 (Fed. Cir. 2009) (attendance at trade shows insufficient presence to confer general jurisdiction).

Helferich's licenses with New York companies also are insufficient to establish general jurisdiction. The Federal Circuit has found that licenses only support personal jurisdiction where the licenses are exclusive licenses, thus creating enforcement obligations and other continuing and substantial contacts with the forum state. *See id*. at 1019; *see also Pieczenik v. Dyax Corp*., 265 F.3d 1325, 1336 (Fed. Cir. 2001) ("The New York courts have made it clear that the mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under section 301").

JetBlue cannot rely on Helferich's suits filed outside the forum state. The Federal Circuit is "aware of no precedent that holds that the filing of a suit in a particular case subjects that party to specific personal jurisdiction everywhere else." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008); *see also Radio Systems,* 638 F.3d at 792 (contacts with the PTO to provoke interference with patent held by Tennessee company did not create jurisdiction in Tennessee; "enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum"). JetBlue's reliance on *Pharmanet, Inc. v. Datasci LLC*, 2009 WL 396180 (D.N.J. 2009) for the proposition that a lawsuit against a forum company in another jurisdiction creates personal jurisdiction is misplaced. The *Pharmanet* court ignored *Avocent* and preceded *Radio Systems*; it simply is wrong, as a matter of law. *See Key Source*, 2012 WL 6001059 *3; *TomTom, Inc. v. Norman IP Holdings, LLC*, 2012 WL 3854915

4

*9 (D. Mass. 2012); *Chicago Board Options Exchange, Inc. v. Realtime Data, LLC*, 2010 WL 118455 *2 (N.D. Ill. 2010) (all finding *Pharmanet* to be contrary to *Avocent*).

Finally, attendance at depositions in New York by Helferich's counsel in connection with the Illinois' cases also cannot provide a basis for personal jurisdiction. *See Weiss v. Greenburg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff, PA*, 85 A.D. 861, 861, 446 N.Y.S.2d 447, 449 (1981).

JetBlue places great weight on the decision in *Ivoclar Vivadent, Inc. v. Hasel*, 2003 WL 21730520 (W.D.N.Y. 2003), which asserted general personal jurisdiction over a patent licensing company based on licensing correspondence and telephone calls with the plaintiff and its distributors and two meetings with one of the distributors in New York. With all due respect, *Ivoclar* is wrongly decided. The limited contacts in *Ivoclar* do not meet the stringent requirements of general jurisdiction. *Cf. Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1352-53 (S.D.N.Y. 1992) (finding general jurisdiction over a patent licensing company which had primary patent counsel in New York and filed two enforcement actions in New York). *Ivoclar* is not persuasive authority.

Helferich's limited contacts with New York are insufficient to establish even specific jurisdiction under § 302; they are clearly not sufficiently continuous and systematic to establish general jurisdiction under § 301. Because JetBlue cannot demonstrate that the requirements of New York's long arm jurisdiction are met, there is no jurisdiction over Helferich in New York (without even addressing the limits of due process). This action should be dismissed pursuant to Rule 12(b)(2), Fed. R. Civ. P.

//

//

## II. TRANSFER TO ILLINOIS IS APPROPRIATE

JetBlue objects to transfer to Illinois. Helferich suggested transfer as a means to allow JetBlue its day in court, despite the fact that this case is subject to dismissal. *See Songbyrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) ("whether or not venue was proper, lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either section 1406(a) or section 1404(a)"). Helferich is perfectly happy to have the case dismissed.

Helferich proposed transfer to promote judicial efficiency. JetBlue is correct that Helferich ignored the usual "convenience" factors as they are, in the circumstances presented, deserving of little weight. Helferich maintains its documents electronically, and assumes JetBlue does the same. The location of employees are similarly not an important factor. *See, e.g., HollyAnne Corp. v. TFT, Inc.,* 199 F.3d 1304, 1307 n. 2 (Fed.Cir.1999) ("the witnesses to be called by the defendant are all its employees; thus their location is not as important a factor as it would be if they were not under the defendant's control"). Helferich is unaware of a single third party witness residing in this District, or who would be inconvenienced by travel to Chicago as opposed to New York. *Clark v. Sprint Spectrum L.P.*, 2010 WL 5173872 *3 (N.D. Cal. 2010) ("a party must identify potential witnesses by name and describe their testimony"). Regardless, Helferich has shown in all litigations a willingness to travel to the witness' location to conduct depositions.

More importantly, however, there are five other *pending cases* in the Northern District of Illinois involving the same patents (and similar allegations of infringement) as are raised by JetBlue's complaint. Regardless of the "convenience" factors, the Court is always able (and required) to consider the interests of justice, including the judicial efficiencies promoted by

6

having one court address the overlapping issues of claim construction, infringement and validity presented by cases arising out of the same patents. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010); *see also* § 1404(a) and § 1406(a) (transfer appropriate "in the interest of justice").

This case and those before Judge Darrah in the Northern District of Illinois address the same patents, and therefore would benefit from the judicial efficiencies promoted by transfer. Because the earliest filed pending case is in Chicago (the *New York Times* case was filed in July 2010), it is appropriate for this later filed case to be transferred to Illinois. *See Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011) ("treating consolidation of related cases as 'paramount' generally involves transferring all the cases to the same forum where the earliest-filed action is pending").[1]

### III.  HELFERICH IS NOT FORUM SHOPPING

Jet Blue's assertions of forum shopping are unfounded and only serve to underscore the weakness of its position. Helferich is an Illinois limited liability company, which originally had its main office in Chicago.[2] For that reason, Helferich filed its first litigations there, including the five now pending before Judge Darrah. Between April 2011 and May 2012, a stay pending reexamination in the lead *New York Times* case effectively halted all the Illinois litigations.

In September 2011, section 300 of the America Invents Act became effective, which

---

[1] Helferich notes that the Northern District of Illinois has a lighter caseload per judge than the Eastern District of New York. For the year ending 12/31/11, the Northern District of Illinois had 488 pending civil cases per judge (519 in weighted filings) vs. 650 (597 weighted) for the Eastern District of New York.  *See* Federal Court Management Statistics, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsDec2011.aspx. *See Intema Ltd. v. NTD Laboratories, Inc.*, 654 F.Supp.2d 133, 138 (E.D.N.Y. 2009) (calendar congestion factor in transferring venue).

[2] Helferich only recently, for various reasons, moved its headquarters to Phoenix, Arizona.

7

generally required patentees to file individual suits against alleged infringers and reflected a growing preference that infringement venue be construed more narrowly. Helferich therefore, in perhaps an excess of caution, filed new cases in Arizona in late 2011 and early 2012 involving (or relating to) longstanding infringement by Arizona companies.

However, at the first status conference in the related Arizona cases, the Honorable Judge Wake suggested at the outset (before making a single ruling or setting any schedule) that the cases be transferred to Chicago, to promote judicial efficiency:

> Well, the reason I pose the question is it appeared to me there was a prospect of a perception of universal self-interest because of the familiarity that judge has and will have and the ability to sequence this litigation with what's going on there.

Transcript of Proceedings, August 31, 2012, Dkt. 106, at 9, *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC, et al.*, U.S. District Court, District of Arizona, No. CV-11-2304. At that time, before any schedule was set or even discussed, Helferich's counsel indicated it would have no objection to a transfer if the parties could work out the jurisdictional issues, and offered to raise the issue with Judge Darrah at the next conference in the Illinois cases. *Id.* at 10. The allegation by JetBlue that Helferich sought transfer after unfavorable rulings by Judge Wake is a clear misrepresentation of the proceedings.

The first status conference before Judge Darrah after the August Arizona hearing was held in early November in the Illinois cases. As suggested by Judge Wake, Helferich asked Judge Darrah if he would entertain transfer of these cases to his court, and Judge Darrah's response was immediate and positive: "Certainly I would. If you're representing that this would really expedite things, certainly I would do that." Transcript of Proceedings, Nov. 8, 2012, at 7, *Helferich Patent Licensing, LLC v. New York Times Company,* No. 1:10-cv-04387.

Thereafter, Helferich inquired of the Arizona defendants whether they would consent to the transfer. No response to those inquiries was received. Helferich, however, agreed with the

8

court that such a transfer would be most efficient for both the parties and the Court, and therefore moved to transfer venue of the Arizona cases to Chicago under § 1404(a). That motion is fully briefed and submitted to the court, and oral argument was heard on January 10, 2013. At the hearing, in response to similar "forum shopping" arguments made by the Arizona defendants, Judge Wake noted: "I didn't really see any forum shopping either in filing this or in the motion." Transcript of Proceedings, January 10, 2013, Dkt. 158 at 55 *Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC, et al.*, U.S. District Court, District of Arizona, No. CV-11-2304. He also reiterated his position that, whether or not transfer was possible, the interests of justice would be best served if the cases were heard together in Chicago: "I made no secret of the fact nothing in this discussion has changed my mind that it would make eminent good sense to have all this litigated in front of Judge Darrah, but it may not be possible." *Id.* at 50.

Still further, JetBlue's accusations of forum shopping are ironic in the face of it having rushed to file suit in New York City in the midst of amicable settlement discussions in which it expressly assured Helferich only days earlier that a counter offer would be forthcoming. *See* Declaration of Donald J. Lisa, attached as Exhibit B ¶5. Having lulled Helferich into believing it was engaged in good faith settlement discussions, and instead of providing a counter offer as promised, JetBlue filed an anticipatory suit in New York City, where it has no jurisdiction over Helferich. Such tactics are seen as blatant forum shopping that warrants giving significantly less weight to plaintiff's choice of forum, and further supports transfer of the case to Illinois. *See Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 276 (2d Cir. 2008)(first to file rule, relating to venue, does not apply where appears filing party engaged in "manipulative or deceptive behavior"); *Intema, Ltd. v. NTD Laboratories, Inc.*, 654 F.Supp.2d 133, 138 (E.D.N.Y. 2009) ("where parties have filed suit to improve their bargaining position in

9

ongoing licensing negotiations" factor in venue); *Family Dollar Stores, Inc. v. Overseas Direct Import Co.*, 2011 WL 148264 *3 (W.D.N.C. 2011)("the instance where an action was filed in the midst of settlement negotiations" permits departure from first filed venue rule). *Cf. EMC Corp. v. Norand Corp.*, 89 F.3d 807, (Fed. Cir. 1996), *overruled on other gds, Medimmune v. Genentech*, 549 U.S. 118 (2007) ("it would be inappropriate to reward – and indeed abet- conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution," therefore a court may consider pendency of licensing negotiations in considering jurisdiction over a declaratory judgment action; *quoting Davox Corp. v. Diginal Systems Int'l, Inc.* 846 F.Supp. 144, 148 (D. Mass. 1993)).

**CONCLUSION**

This Court lacks personal jurisdiction over defendant Helferich. This action should be dismissed. In the alternative, it should be transferred to the Northern District of Illinois where it can be considered in an efficient manner with other pending cases regarding the same patents.

    Respectfully submitted,

    **VICTORIA GRUVER CURTIN, PLC**
    14555 North Scottsdale Road, Suite 160
    Scottsdale, AZ  85254
    Tel : 480-998-3547
    Fax: 480-596-7956
    Attorneys for Defendant

By: */s/ Victoria Curtin*
    VICTORIA CURTIN (*pro hac vice*)

Dated: January 17, 2013

Donald J. Lisa (DL0812)
Law Offices Of Steven G. Lisa, Ltd.
14555 N. Scottsdale Rd., Ste 160
Scottsdale, AZ 85254
480-262-1088

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I caused the attached Brief to be served by ECF electronic filing and by regular mail upon:

>Franscisco A. Villegas
>Joyce E. Kung
>Cohen & Gresser, LLP
>800 Third Avenue, 21st Floor
>New York, NY  10022
>
>Casey L. Griffith
>Klemchuk Kubasta, LLP
>8150 North Central Expwy., 10th Floor
>Dallas, TX  75206

>By: */s/ Victoria Curtin*
>     VICTORIA CURTIN (*pro hac vice*)

Dated: January 17, 2013
      Scottsdale, AZ.

# Exhibit B

**EXHIBIT B**

I, Donald J. Lisa, do hereby declare:

1.　I am an attorney in good standing licensed to practice law in the State of New York, among others. I am employed as a litigation and licensing attorney part time by the law firm of the Law Offices of Steven G. Lisa. I am counsel to the defendant, Helferich Patent Licensing, LLC ("Helferich"). I make this declaration upon my own personal knowledge.

2.　On July 16, 2012 Steven Lisa was contacted by mail by Ellie Boragine, Advertising and Commercial Counsel for JetBlue located at Long Island City, N.Y. indicating she was reviewing the allegations in Helferich's notice letter and that she would follow up with Steve.

3.　On July 20, 2012 I emailed Ms. Boragine, in follow up to her letter, and requested a preliminary telephone conversation with her to assist her in making her review more efficient.

4.　Following nine further emails to set up a conference, on August 23, 2012 at 12:00 PM Arizona time I communicated with Ms. Boragine by phone. She identified her outside counsel, who was not on the call, as Casey Griffith, who would be sending me his contact information. My conversation with Ms. Boragine was brief wherein she stated that the notice letter was atypical due to its detail, length, number of patents and exhibits.

5.　On August 23, 2012, I received an email from Casey Griffith, providing his contact information. Between August 23, 2012 and November 27, 2012, I had several calls regarding JetBlue with Mr. Griffith. On November 27, 2012, I conducted my last licensing call with Mr. Griffith. During this call, Mr. Griffith indicated that JetBlue was not inclined to accept Helferich's licensing proposal, and that JetBlue would make a counter-offer proposal by mail.

There was no indication from Mr. Griffith that negotiations would not continue.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of January, 2013, in Mesa, Arizona.

>/s/ Donald J. Lisa
>Donald J. Lisa