UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JETBLUE AIRWAYS CORP.,

                    Plaintiff,

         - against -

HELFERICH PATENT LICENSING, LLC,

                  Defendant.

---

**Memorandum and Order Granting in Part and Denying in Part Defendant's Motion to Dismiss or Transfer**

12-CV-5847

**Appearances**

**For Plaintiff:**

Casey L. Griffith, Esq.
Klemchuk Kubasta LLP
8150 North Central Expressway
10th Floor
Dallas, Texas 75206

Francisco A. Villegas, Esq.
Joyce E. Kung
Cohen & Gresser LLP
800 Third Ave
New York, New York 10022

**For Defendant:**

Donald J. Lisa, Esq.
Law Offices of Steven G. Lisa
14555 North Scottsdale Road
Suite 160
Scottsdale, Arizona 85254

Victoria Curtin, Esq.
Victoria Gruver Curtin, PLC
14555 North Scottsdale Road
Suite 160
Scottsdale, Arizona 85254

Jᴀᴄᴋ B. Wᴇɪɴsᴛᴇɪɴ, **Senior United States District Judge:**

## Table of Contents

I.   Introduction ........................................................................................................................... 3

II.  Facts ........................................................................................................................................ 4

III. Procedural History ............................................................................................................... 7

IV. Personal Jurisdiction .......................................................................................................... 7

   A.  Law ................................................................................................................................... 7

      1.  Personal Jurisdiction Generally ......................................................................... 7

      2.  General Jurisdiction in New York ...................................................................... 9

      3.  Due Process Requirements in Patent Cases ................................................... 11

   B.  Application of Law to Facts ...................................................................................... 14

   C.  Inapplicability of Appellate Cases Relied Upon by Defendant ........................ 17

   D.  Revocation of Sealing Order .................................................................................... 18

V.   Transfer of Venue ............................................................................................................. 21

   A.  Law ................................................................................................................................. 21

   B.  Application of Law to Facts ...................................................................................... 22

      1.  The Case Could Have Been Initiated in the Northern District of Illinois .................... 22

      2.  Remaining Factors Weigh in Favor of Transfer .......................................... 22

         a)  Convenience of Witnesses ....................................................................... 22

         b)  Convenience of Parties ............................................................................. 23

         c)  Location of Relevant Documents ............................................................ 25

         d)  Locus of Operative Facts ......................................................................... 25

         e)  Availability of Compulsory Process ....................................................... 26

         f)  Relative Means of Parties ......................................................................... 26

         g)  Familiarity with Governing Law ............................................................. 26

         h)  Plaintiff's Choice of Forum ..................................................................... 26

         i)  Trial Efficiency and the Interests of Justice .......................................... 27

VI. Conclusion ......................................................................................................................... 28

I.      **Introduction**

Helferich Patent Licensing, LLC ("Helferich" or "Defendant") is a company that licenses and enforces patents to which it lays claim.  It is registered to do business and has an office in Illinois.  Its principal place of business is Arizona.  It does not manufacture or sell products derived from the patents it claims to own.  Rather, it seeks to enforce its patents and demands licensing fees from companies employing what it considers to be infringing technology.

Through written correspondence and telephone calls to New York, in the summer of 2012 Helferich placed plaintiff JetBlue Airways Corporation ("JetBlue" or "Plaintiff"), a corporation headquartered in New York that operates aircraft throughout the nation, "on notice that its activities of wireless content provision and messaging . . . infringe numerous claims of Helferich's issued patents and pending applications."  Compl. Ex. A, Nov. 27, 2012, CM/ECF No. 1-2 ("Compl. Ex. A"), at 1.  Offered by Helferich to JetBlue was the opportunity to enter into a licensing agreement, cease use, or face patent-enforcement litigation.  *Id*. at 30-31.  Helferich noted that it had licensed use of its patents to others and, in cases where agreements could not be reached, it had sued.  *Id*. at 1.

In November 2012, JetBlue sued Helferich in this court.  It seeks declarations of non-infringement and invalidity.  It asserts that Helferich's business is the licensing of patents and that it routinely conducts corporate activity in New York.  *See* Compl., Nov. 27, 2012, CM/ECF No. 1 ("Compl."), at ¶ 88.

Helferich moves to dismiss the complaint for lack of personal jurisdiction or to transfer the case to the Northern District of Illinois where it has already initiated litigation against other companies over the validity of the same patents.

Defendant is "doing business" in New York.  There is a basis for exercising personal jurisdiction over it.  Policy issues affecting substantive patent law in litigation such as the present one do not affect the personal jurisdiction decision.  *C.f. Overstock.com, Inc. v. Furnace Brook, LLC*, 420 F. Supp. 2d 1217, 1222-23 (D. Utah 2005) (acknowledging that substantive patent policy should be determined by Congress or the Court of Appeals for the Federal Circuit); Richard A. Poster, *Why There Are Too Many Patents in America*, The Atlantic, July 12, 2012, *available at* http://www.theatlantic.com/business/archive/2012/07/why-there-are-too-many-patents-in-america/259725/ (last visited Feb. 26, 2013) (discussing "the general problems posed by the structure and administration of our current patent laws, a system that warrants reconsideration by our public officials").

In the interest of justice, judicial economy, and for convenience of the parties and witnesses, Defendant's motion to transfer the case to the Northern District of Illinois, where earlier-filed cases present the same issues, is granted.

Defendant previously requested, and was granted, a sealing order pertaining to certain of its commercial records.  *See* Order Granting Motion for Leave to Electronically File Document under Seal, Feb. 12, 2013, ECF No. 24 ("Sealing Order").  The information it wants to shield from disclosure is necessary to decide the present motions and should not be kept from the public.  The previously granted order is revoked.

## II.    Facts

Helferich lacks any permanent physical presence in New York, but it derives significant economic benefit from substantial ongoing activities within the State.  Despite a lack of property or employees in the state, it maintains sustained commercial contacts in New York.

It is the holder of a portfolio of patents relating to mobile phone websites, applications, and social networking tools.  *See* Def.'s Mem. L. Supp. of Mot. to Dismiss or Transfer Ex. A, Dec. 20, 2012, CM/ECF No. 7 ("Def.'s Mem."), at 2.  It does not manufacture or sell tangible products—in New York or elsewhere—that incorporate its patents.  Its income is derived from licensing agreements, settlements and court judgments.  *See* Decl. of Victoria Curtin in Supp. of Def.'s Mem., Dec. 20, 2012, CM/ECF No. 7 ("Curtin Decl."), at ¶¶ 3-4.

As it did with JetBlue, Helferich notifies those it accuses of patent infringement of the alternatives of entering a licensing agreement or facing litigation.  In the last year, more than twelve percent of the companies receiving "license or litigate" letters from Helferich were based in New York.  *See* Def.'s Supp. Br. in Supp. of Mot. to Dismiss or Transfer Ex. B, Feb. 7, 2013, CM/ECF No. 22-1 ("Def.'s Supp. Br. Ex. B"), at ¶ 6.

Since early 2007, Helferich has entered into over 165 non-exclusive licensing agreements related to its stock of patents.  *Id*. at ¶ 5.  Thirteen percent of Helferich's licensing agreements have been negotiated and entered into with New York companies, resulting—in the last twelve months alone—in revenue to Helferich of over three million dollars from New York companies. *Id*. at ¶¶ 2-3.

Where licensing agreements cannot be reached with infringing entities based in New York, Helferich has pursued enforcement litigation.  While it has never filed suit in New York, it has conducted six depositions in the State in connection with its out-of-state litigation.  *See* Curtin Decl. ¶ 8.

In the instant litigation, Helferich first contacted JetBlue by a letter sent to JetBlue's corporate headquarters in New York on June 1, 2012.  *See* Compl. Ex. A.  It alleged infringement by JetBlue, explained how Helferich has licensed its patents to several entities

while suing others, and requested that JetBlue pay for licenses of the allegedly infringed-upon patents. *Id.* Thereafter, Helferich's attorneys exchanged nine emails with JetBlue's in-house counsel located in New York regarding the scheduling of a conference call. *See* Curtin Decl. ¶ 6. Subsequent communications between Helferich and JetBlue involved JetBlue's outside counsel located in Texas. *Id.*

Unwilling to reach a licensing agreement, JetBlue filed a declaratory judgment action for non-infringement in the federal court for the Eastern District of New York on November 27, 2012. *See* Compl.

Earlier enforcement litigation brought by Helferich and involving the same patents at issue in the instant case is ongoing in federal district courts in Arizona and Illinois. Before the same judge in the Northern District of Illinois, Helferich is involved in five such litigations. *Id.* at ¶ 9. The parties there are to begin briefing the defendants' joint motion for summary judgment on the issue of patent exhaustion in March 2013, with a hearing on the issue set for July 2013. *See Helferich Patent Licensing, LLC v. The New York Times Co.*, No. 10-CV-4387, and related cases (D. Ill. Jan. 15, 2013) (scheduling order), ECF No. 197. The issue of claim construction will be briefed and heard in the Illinois cases later this summer. *Id.*

An additional four cases involving the same patents are consolidated in the District of Arizona before one district judge. *Id.* ¶ 10. A motion to transfer the Arizona cases to the Northern District of Illinois was denied after it was determined that all of the parties in the Arizona litigation would not be subject to personal jurisdiction in the Northern District of Illinois. *See Helferich Patent Licensing v. Suns Legacy Partners, LLC*, No. 11-CV-2304 (D. Ariz. Feb. 5, 2013) (order denying motion to transfer venue), ECF No. 164.

### III. Procedural History

Defendant moved on December 20, 2013 to dismiss for lack of personal jurisdiction or to transfer the case to the Northern District of Illinois. *See* Def.'s Mem. A hearing on that motion was held on January 31, 2013. *See* Minute Entry, Jan. 31, 2013, ECF No. 18.

The parties submitted supplemental briefs on the issue of transfer of jurisdiction and venue. *See* Tr. of Mot. to Dismiss or Transfer Hr'g, Jan. 31, 2013 ("Hr'g Tr.") 20; *see also* Order on Supplemental Briefing, Feb. 5, 2013, ECF No. 19. In response to assertions by Helferich that it is not subject to personal jurisdiction in this State, Helferich was directed to provide additional information related to the number of licenses it issues to New York companies, its revenue derived from those licenses, and the number of New York companies to which it sent letters seeking licensing agreements. *See* Hr'g Tr. 6-7; *see also* Order on Supplemental Briefing, Feb. 5, 2013, ECF No. 19. Extensive submissions were filed. *See* Pl.'s Supp. Letter Br., Feb. 7, 2013, ECF No. 20 ("Pl.'s Supp."); Def.'s Supp. Br. in Support of Mot. to Dismiss or Transfer, Feb. 7, 2013, ECF No. 21; Def.'s Second Supp. Br. in Support of Mot. to Dismiss or Transfer ("Def.'s Second Supp. Br."), Feb. 18, 2013, ECF No. 26.

### IV. Personal Jurisdiction

#### A. Law

##### 1. Personal Jurisdiction Generally

A defendant may move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In an action such as this one that concerns the validity of a patent, the existence of personal jurisdiction is, under Federal Circuit law, determined in accordance with the law of the Court of Appeals for the Federal Circuit. *See Hildebrand v. Steck Mfg. Co., Inc.,* 279 F.3d 1351, 1354 (Fed. Cir. 2002) ("We apply Federal Circuit law to determine whether the district court properly exercised personal jurisdiction over out-of-state

defendants in patent infringement cases."). Pursuant to the law of the Federal Circuit, the district court is required to "accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in its favor." *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006). "When personal jurisdiction is challenged, . . . the plaintiff has the burden of showing that jurisdiction exists." *Iowa State Univ. Research Found., Inc. v. Greater Continents, Inc.*, 81 Fed. App'x 344, 349 (Fed. Cir. 2003). Where an evidentiary hearing has not been held, the plaintiff's burden is only to make a prima facie showing of jurisdiction. *See Hoffritz for Cutlery, Inc. v. Amajac, Inc.*, 763 F.2d 55, 57 (2d Cir. 1985).

The test for personal jurisdiction under the law of the Federal Circuit mirrors that of the one employed by the Court of Appeals for the Second Circuit. It has two steps. First, the court looks to personal jurisdiction law of the forum state and determines whether it is satisfied. There are two concepts of personal jurisdiction in the forum state, New York: general and specific, the latter known as "long-arm jurisdiction." *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985).

"Where [general] jurisdiction is predicated upon the provisions of [New York] CPLR 301, there is no need to establish a connection between the cause of action in issue and the foreign defendant's business activities within the state, because the authority of the New York courts is based solely upon the fact that the defendant is 'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction.'" *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981). *See also Nautilus Ins. Co. v. Adventure Outdoors, Inc.*, 347 F.R.D. 356, 358-59 (E.D.N.Y. 2007) (state may exercise general personal "jurisdiction over any dispute involving the party" regardless of whether "plaintiff's cause of action . . . [arose] out of defendant's contacts with the forum state"). Specific

8

jurisdiction, by contrast, applies where the defendant's continuing contacts with the forum state are not substantial but the contacts in the specific matter sued upon are significant, *i.e.*, "a State exercises personal jurisdiction over a defendant in a suit . . . arising out of or related to the defendant's contacts with the forum." *Burger King Corp.*, 471 U.S. at 473 n.15.

Under the second step of the test for personal jurisdiction of the Federal Circuit, if state law is found to confer personal jurisdiction over the defendant, the court must decide whether the exercise of personal jurisdiction comports with constitutional due process requirements. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). Here, this second "step" is redundant since the law of the forum, New York, does not reach the outer-limits of the Due Process Clause. *Cf. Tablot v. Johnson Newspaper Corp.*, 71 N.Y.2d 827, 829-30 (1988) ("While appellants urge that jurisdiction may constitutionally be premised on broader standards articulated by the United States Supreme Court, the New York long-arm statute does not provide for in personam jurisdiction in every case in which due process would permit it.") (internal citations omitted); *Pieczenik v. Dyax Corp.*, 165 F.3d 1329, 1333 (Fed. Cir. 2001) (limiting personal jurisdiction inquiry because "New York's long-arm statute does not reach the limits of due process") (citing *Talbot*, 71 N.Y.2d at 829-30).

## 2.   General Jurisdiction in New York

Under New York CPLR 301, personal jurisdiction over an out-of-state corporation exists if it is "doing business" in New York. *See Wiwa v. Royal Dutch Petroleum, Co.*, 226 F.3d 88, 96 (2d Cir. 2000). "[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, *but with a fair*

*measure of permanence and continuity*." *Id*. (internal citation and quotation marks omitted) (emphasis added).

In assessing whether a corporation's business is conducted "with a fair measure of permanence and continuity," the following non-dispositive factors among others are considered: "[1] the existence of an office in New York; [2] the solicitation of business in New York; [3] the presence of bank accounts or other property in New York; and [4] the presence of employees or agents in New York." *Li v. Hock*, 371 Fed. App'x 171, 174 (2d Cir. 2010) (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)).

A permanent physical presence in New York is not a necessary condition for finding general personal jurisdiction under CPLR 301. *See Landoil Resources Corp.*, 918 F.2d at 1044. "*[S]ubstantial and continuous*" solicitation of business with "very little more" will support such a finding. *See Aquascutum of London, Inc. v. S.S. Am. Champion*, 426 F.2d 205, 211 (2d Cir. 1970) (Friendly, J.) (emphasis added). What constitutes more than "very little more" will often take the form of "financial or commercial dealings in New York." *Id*. at 212 (internal citations omitted). General jurisdiction can be achieved without a representative stepping foot in the state.

In this day of overnight mail and electronic communications, sustained commercial communications with New York residents suffices. *C.f. Deutsche Bank Secs., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (2006) (Kaye, C.J.) ("[T]he growth of national markets for commercial trade, as well as technological advances in communication, enable a party to transact enormous volumes of business within a state without physically entering it."); *Three Five Compounds, Inc. v. Scram Tech., Inc.*, No. 11-CV-1616, 2011 WL 5838697, at *7 (S.D.N.Y. Nov. 21, 2011) ("Just as the call into the auction room placed the defendant . . . into a transaction occurring in New York, an ongoing relationship tethers the defendant to the plaintiff's ongoing

10

commercial activity in New York such that the defendant in effect participates in the plaintiff's

transaction of business.  In that circumstance, the defendant's interstate communication is the

transaction. . . .") (internal quotation marks omitted).

### 3.      Due Process Requirements in Patent Cases

In addition to demonstrating that personal jurisdiction under the forum state's law exists,

a plaintiff must establish that an exercise of personal jurisdiction would "not offend 'traditional

notions of fair play and substantial justice.'"  *Int'l Shoe v. Washington*, 326 U.S. 310, 316

(1945).  Compliance with the Due Process Clause is required to ensure that a non-domiciliary is

protected from "being subject to the binding judgments of a forum with which he has established

no meaningful 'contacts, ties, or relations.'"  *Burger King Corp.*, 471 U.S. at 471-72 (internal

citations omitted).

In the context of a patent-infringement dispute, "an assertion of general jurisdiction

requires that the defendant have 'continuous and systematic' contacts with the forum state, and

that such activity will confer[] [general] personal jurisdiction even when the cause of action has

no relationship with those contacts."  *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d

1324, 1331-32 (Fed. Cir. 2008).  A more specific test for determining when due process will be

offended by an assertion of general jurisdiction over an out-of-state defendant in a patent case

has not yet been developed by the United States Supreme Court or Court of Appeals for the

Federal Circuit.  *See id.* at 1331; *see also LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d

1369, 1375 (Fed. Cir. 2000).

An analogous situation to asserting general personal jurisdiction over a defendant in a

patent case seeking a declaratory judgment exists in the field of products liability.  In *Asahi*

*Metal Industry Company v. Superior Court*, 480 U.S. 102 (1987), the Supreme Court considered

whether personal jurisdiction could be asserted over a downstream manufacturer despite the manufacturer's lack of direct contacts with the forum state.  A plurality of the Court held that the "mere act of placing the product into the stream of commerce]" is insufficient to establish personal jurisdiction consistent with due process; *"[a]dditional conduct"* indicating "an intent or purpose to serve the market in the forum State" is needed.  *Id*. at 112 (emphasis added).

Like jurisdiction based on an out-of-state defendant's placement of a product into the "stream of commerce," personal jurisdiction can exist over a patent holder when it derives substantial revenue from the use of its patents in the forum state *and* it purposefully affiliates itself for business purposes with the forum state.  *See In re DES Cases*, 789 F.Supp. 552, 570-71 (E.D.N.Y.1992) ("[New York courts] have . . . asserted that the mere likelihood that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being hauled into New York court is required.") (collecting cases); *cf. Avocent*, 552 F.3d at 1331 ("[I]t remains unclear whether contacts based solely on the 'stream of commerce' may suffice to establish general jurisdiction.").  "[W]hether the defendant purposefully establishe[s] 'minimum contact' in the forum state" is thus the "constitutional touchstone" to the due process inquiry.  *Burger King Corp.*, 471 U.S. at 474.

In the context of specific—"long arm"—personal jurisdiction, the Court of Appeals for the Federal Circuit has held that sending a cease-and-desist letter does not, by itself, suffice to establish personal jurisdiction consistent with constitutional due process.  *See Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt Inc.*, 148 F.3d 1355 (Fed. Cir. 1998)).  In line with general legal principles encouraging out-of-court settlement, "fair play and substantial justice afford a patentee sufficient

12

latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Red Wing Shoe Co.*, 148 F.3d at 1360-61. "[A]ttempts to sell a product or license a patent do not give rise to [specific] personal jurisdiction in declaratory judgment actions for non-infringement or invalidity." *Radio Sys. Corp.*, 638 F.3d at 789. "[O]nly enforcement or defense efforts related to the patent . . . are to be considered for establishing specific personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir. 2009).

Informing third parties about one's patent rights can contribute to a finding of personal jurisdiction when combined with efforts to enforce—particularly where intertwined with activity to sell or to license—a patent. In *Inamed Corp. v. Kuzmak*, for example, the Court of Appeals for the Federal Circuit found personal jurisdiction over a patentee consistent with due process requirements because it had sent a cease-and-desist letter to the plaintiff in the forum state, negotiated four license agreements (including an exclusive license agreement) with other parties in the forum state, and received over $1.3 million dollars in connection with those license agreements. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1361-62 (Fed. Cir. 2001) ("Other activities are required in order for a patentee to be subject to personal jurisdiction in the forum.") (quoting *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). And, in *Akro Corp. v. Luker*, a patentee was found subject to personal jurisdiction consistent with the due process where it had "granted an exclusive license to one of the accused infringer's competitors" in the forum state. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1548 (Fed. Cir. 1995). The exclusive license placed upon the patentee "continuing obligations" and resulted in substantial contacts with the forum state. *Id*. at 1456.

13

The Federal Circuit has distinguished, in the context of *specific* personal jurisdiction, between "[a]n offer to license" and "an arms-length negotiation in anticipation of a long-term continuing business relationship." *Red Wing Shoe Co.*, 148 F.3d at 1361 (citing *Burger King*, 471 U.S. at 479). But where, in the context of *general* jurisdiction, a patentee not only offers to license but also negotiates, enters into agreements, and derives substantial economic benefit from companies in a forum state, it has begun a "long-term business relationship." These efforts "in the aggregate justify the exercise of general jurisdiction." *Avocent*, 552 F.3d at 1335-36 & n.5. *Cf. Deutsche Bank Securities*, 7 N.Y.3d at 71 & n.2 (explicitly declining to "consider whether [defendant] is 'doing business' in New York such that it was 'present'" but noting "that, in the year preceding the transaction at issue, [defendant] purchased approximately $471 million worth of securities directly from the New York offices of various entities in the securities industry" based in New York).

### B.  Application of Law to Facts

The exercise of personal jurisdiction over Helferich on a theory of general jurisdiction is warranted. *See* CPLR 301. It systematically and continuously avails itself of the laws of New York by contacting New York companies; and entering into licensing agreements with, and deriving substantial revenue benefit from, them. *See* Part II, *supra.* There is no reason to avoid finding jurisdiction where Helferich's business is effectively to inform others of its purported patent rights. It sells patent claims. That is its "product," aggressively merchandized in New York through email, phones and other forms of communication exchanged with businesses operating in New York.

Solicitation of business in New York plus minimal additional contacts with the State will satisfy CPLR 301. The products sold by Helferich are licensing agreements and covenants not to

engage in patent infringement litigation.  *See* Def.'s Mem. 3 ("Helferich's business consists of monetizing these patents through licensing."); Hr'g Tr. 11-12 ("THE COURT: So you'll license to anybody who agrees with you on [licensing] fees?  [HELFERICH'S ATTORNEY]: Yes, Your Honor.").  Helferich systematically and continuously sells its "products" to New York companies.  Through letters seeking licensing agreements, Helferich has contacted over thirty New York companies in the last twelve months.  *See* Def.'s Supp. Br. Ex. B.  It follows up with New York companies, as it did with JetBlue, through email and telephone calls, amplifying the amount of solicitation it aims at New York.

As the following summary provided by Helferich demonstrates, it is a business with deep roots in New York that is "doing business" under State and constitutional jurisprudence.  Its contacts are neither transient nor fleeting.  They include:

- Acceptance of twenty-two license agreements with New York companies, accounting for thirteen percent of all of Helferich's licensing agreements;

- Letters seeking licensing agreements sent to thirty-four New York-based companies during the last twelve months, accounting for 12.5% of all licensing letters Helferich has sent to companies in that period; and

- Revenue of over three million dollars from New York companies in the last twelve months, accounting for 9.5% of revenue during that time period.

*See* Def.'s Supp. Br. Ex. B.

These massive contacts are sufficient to permit an exercise of general personal jurisdiction.  While such solicitation efforts are, in part, aimed at informing third parties of Helferich's patent rights, their purpose is to forewarn of patent enforcement proceedings in the event that a licensing agreement cannot be reached.  *See* Hr'g Tr. 9 ("THE COURT: . . . [I]f they do what you want them to do, you're going to embrace them, but assuming they don't want to, you are going to enforce, aren't you?  [HELFERICH'S ATTORNEY]:  Eventually, yes.").

15

Helferich contacts New York companies on an average of nearly three times per month with the expectation of entering a licensing agreement or otherwise enforcing its alleged patents.  These solicitation efforts are sophisticated and often successful; millions of dollars are earned from them.  *Cf. Deutsche Bank Sec. Inv.*, 7 N.Y.3d 71-72 (assertion of personal jurisdiction over "sophisticated" defendant was warranted and "distinct from [assertion of personal jurisdiction over] an out-of-state individual investor making a telephone call to a stockbroker in New York").

A large out-of-state company such as Helferich that derives some ten percent of its revenue from New York, *see* Def.'s Supp. Br. Ex. B ¶¶ 2-3, has sufficiently aimed its activities into New York for general personal jurisdiction to apply.  *Cf. Copterline Oy v. Sikorsky Aircraft Corp.*, 649 F. Supp. 2d 5, 16-17 (E.D.N.Y. 2007) ("District Courts in this Circuit agree that where a foreign corporation derives less than five percent of its overall revenue from sales in New York, such sales are not substantial enough to force a foreign defendant to litigate in New York.") (citing cases).

Compelling Helferich to appear before a New York court does not offend notions of fair play and justice.  Helferich routinely engages New York companies in "arms-length negotiation[s] in anticipation of a long-term continuing business relationship" to sell a product.  *See Red Wing Shoe*, 148 F.3d at 1361; *see also Radio Sys. Corp.*, 638 F.3d at 791 (threat to pursue litigation unless payment for use of technology is made constitutes enforcement-related activity); *Deutsche Bank Sec. Inv.*, 7 N.Y.3d 71-72 (constitutional due process requirement satisfied where personal jurisdiction asserted over defendant that "entered New York to transact business . . . by knowingly initiating and pursuing a negotiation with [an] employee in New York that culminated in sale of $15 million in bonds").  Anticipated business relationships of Helferich are hatched from confrontations in New York.  *C.f. Radio Sys. Corp.*, 638 F.3d at 791 ("The

16

communication between Accession and Radio Systems prior to August 2009 was focused on the creation of a *cooperative* business arrangement to market the Wedgit and thus was *of an entirely different nature than the enforcement-related activities* in *Electronics for Imaging*.") (emphasis added).

The income generated from Helferich's license agreements depends on the use in New York of its alleged patents by those in New York. Like an out-of-state manufacturer of the component part of a product that causes injury in New York, Helferich can be said to have placed its products into the "stream of commerce" and done so with the purpose that its products will affect New York. *See Asahi Metal Indus.*, 480 U.S. at 112 ("[A] finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State*.") (emphasis in original).

Although Helferich has no offices, employees or assets in New York, it is doing business in New York. It cannot deny the companies it targets the benefits of local general jurisdiction.

## C.    Inapplicability of Appellate Cases Relied Upon by Defendant

Defendant relies upon a series of appellate cases denying personal jurisdiction in cases brought against patent holders such as Helferich. *See* Def.'s Mem. 4-5. They are inapplicable.

New York's general jurisdiction statute—CPLR 301—satisfies due process. Assuming, without deciding, that a special constitutional rule of due process applies in the context of patents, the facts in this case more than satisfy any reasonable articulation of that test by the Federal Circuit. *C.f. City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 150 (2011) (Wesley, J., concurring) (expressing disagreement with *Mass Tort Jurisdiction and Choice of Law in a Multinational World Communicating by Extraterrestrial Satellites*, 37 Willamette L. Rev. 145 (2001) and noting that "fair and orderly administration of the laws is best achieved by

17

applying the same standards to all litigants and by adherence to well-defined legal principles")
(internal quotation marks omitted); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir.
1963) (en banc) ("[T]he amenability of a foreign corporation to suit in a federal court in a
diversity action is determined in accordance with the law of the state where the court sits, with
'federal law' entering the picture only for the purpose of deciding whether a state's assertion of
jurisdiction contravenes a constitutional guarantee.").

Entering license agreements and gaining settlements and judgments constitutes a
substantial part of Helferich's business; these are not tenuous connections to the forum state.
They are sufficient for New York's general personal jurisdiction provision to apply.

### D.      Revocation of Sealing Order

Personal jurisdiction over Helferich is based on a summary it provided of its commercial
contacts with New York.  *See* Def.'s Supp. Br. Ex. B; Part IV.B, *infra*.  The information was
furnished at the court's request.  Leave had been previously granted to file the summary under
seal and for attorneys' eyes only in order to provide the court with an opportunity to examine the
relevance of Helferich's contacts with New York.  *See* Sealing Order.

Resolution of this litigation can only be achieved with reference to Helferich's contacts—
which are substantial—with New York.  The public interest in disclosing the rationale for
asserting personal jurisdiction overwhelms any countervailing privacy interest of Defendant.
The sealing order is revoked.

Transparency in judicial proceedings is a value protected by the Constitution and
common law.  *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (plurality
opinion) ("[T]he First Amendment guarantees of speech and press, standing alone, prohibit
government from summarily closing courtroom doors which had long been open to the public at

the time that Amendment was adopted."); *id*. at 587  (Brennan, J., concurring) ("[T]he First

Amendment . . . has a *structural* role to play in securing and fostering our republican system of

self-government.") (emphasis in original); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir.

1995) ("The common law right of public access to judicial documents is said to predate the

Constitution.").  It should be fiercely protected absent strong competing interests.

　　The decision of whether to seal judicial documents—and deny public access to them—

"is one best left to the sound discretion of the trial court."  *Nixon v. Warner Commc'ns, Inc.*, 435

U.S. 589, 599 (1978).  Such discretion is "to be exercised in light of the relevant facts and

circumstances of the particular case."  *Id*.  A three-part test is employed to determine: (1)

whether "the documents at issue are 'judicial documents'" to which the presumption of public

access applies; (2) the weight of any applicable presumption of public access; and (3) any

"competing considerations" that might rebut the presumption of public access.  *See Lugosch v.*

*Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

　　The summary of Helferich's contacts with New York is a "judicial document" to which a

presumption of public access applies.  *Id*.  It is "'relevant to the performance of the judicial

function and useful in the judicial process'" and presumed to be subject to public monitoring.  *Id*.

(quoting *Amodeo*, 71 F.3d at 145)).

　　The strength of that presumption is "governed by the role of the material at issue in the

exercise of Article III judicial power and the resultant value of such information to those

monitoring the federal courts."  *United State v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)

("*Amodeo II*").  Material such as an exhibit in aid of a dispositive motion "fall[s] on the end of

the continuum subject to the strongest presumption of access."  *In re Gushlak*, No. 11-MC-218,

2012 WL 3683514, at *2 (E.D.N.Y. July 27, 2012) (citing *Lugosch*, 435 F.3d at 123).  The

19

presumption of public access "is at its apogee" in a case like this.  *See Gamble v. Deutsche Bank AG*, 377 F.3d 133, 140 (2d Cir. 2004).

Only "competing considerations" such as "'the privacy interests of those resisting disclosure'" will defeat the strong presumption of public access attached to the summary of Helferich's contacts with New York.  *See Lugosch*, 435 F.3d at 120  (quoting *Amodeo II*, 71 F.3d at 1049).  Helferich's business practices, including the price of its licenses, have been the subject of newspaper articles as recently as August 2012.  *See, e.g.*, Ryan Nakashima, *New York Times Leads Group defense in Mobile-Text Patent Suit*, USA Today, Aug. 28, 2012, *available at* http://usatoday30.usatoday.com/ money/media/story/2012-08-28/mobile-patent-suit-New-York-Times/57368374/1 (noting that roughly 100 companies have entered licensing agreements with Helferich for a one-time fee of $750,000).  Provided by Helferich's counsel in open court at the hearing on the instant motions was an estimate of the number of New York companies to which Helferich has provided licensing agreements.  *See* Hr'g Tr. 6-7 (noting that Helferich has "approximately 15" licenses with New York companies and derives approximately ten percent of its income from those licenses).

Any countervailing privacy interest of Helferich cannot defeat the strong presumption of public disclosure where the material it seeks to seal is already in the public domain.  *See Gambale*, 377 F.3d at 144 (district court's reference to "multimillion-dollar settlement" in published order cannot be sealed because court lacks "the means to put the genie back" in the bottle); *Gucci Am., Inc. v. Guess?*, No. 09-CV-4373, 2010 WL 141689, at *1 (S.D.N.Y. April 8, 2010) (sealing order unavailable for materials already in public domain); *Centauri Shipping Ltd. v. Western Bulk Carriers KS*, 528 F. Supp. 2d 197, 205-06 (S.D.N.Y. 2007) (sealing order unavailable for material that "ha[d] already been the subject of an article in a maritime

20

publication to which 70% of Counsel's maritime clients subscribe") (internal quotation marks omitted).

The materials in the summary of contacts are not sufficiently damaging to warrant suppression.  They are critical to the court's decision and subject to public inspection.

## V.   Transfer of Venue

### A.   Law

As an alternative to dismissing the case for lack of personal jurisdiction, Defendant urges transfer of the case to the United States District Court for the Northern District of Illinois pursuant to either section 1404(a) or 1406(a) of Title 28 of the United States Code.  Section 1404(a) authorizes a court to transfer any civil action "to any other district or division where it might have been brought" if doing so would convenience the parties and witnesses, and would serve the interest of justice.  *See* 28 U.S.C. § 1404(a).  Section 1406(a) permits transfer of a case pursued in the "wrong district."   *See* 28 U.S.C. § 1406(a)  Because personal jurisdiction exists over Helferich in this district and venue is proper here, *see* 28 U.S.C. § 1331(b)(2), transfer under section 1406(a) is unavailable.

A two-part inquiry is involved in applying section 1404(a): (1) whether the action could have initially been brought in the transferee court; and (2) whether the interests of justice and convenience of the parties and witnesses will be served by the transfer.  *See Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).  Some of the factors to be

considered when deciding whether transfer is warranted based on the convenience of the parties and witnesses include:

> (1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with governing law, (8) the weight accorded to plaintiff's choice of forum, and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006).

### B.    Application of Law to Facts

#### 1.    The Case Could Have Been Initiated in the Northern District of Illinois

Since Helferich is registered to do business in Illinois, the courts of that state could have exercised personal jurisdiction over it at the time the suit commenced.  *See* 735 Ill. Comp. Stat. Ann. 5/2-209(b)(4).  JetBlue is also subject to personal jurisdiction there.  It is an airline operating planes that regularly serve areas in the Northern District of Illinois.

#### 2.    Remaining Factors Weigh in Favor of Transfer

##### a)    Convenience of Witnesses

The convenience of witnesses is an important factor in considering whether transfer is appropriate.  *See Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) (citing cases).  In the context of patent litigation, particular emphasis is placed on the convenience for witnesses testifying about the technology of allegedly infringing inventions.  *See Int'l Securities Exch., LLC v. Chicago Bd. Options Exch. Inc.*, No. 06-CV-13445, 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007) (citing cases).

JetBlue contends that, "with one exception, all JetBlue employees directly involved" with any allegedly infringing products work at JetBlue's headquarters in New York.  *See* Pl.'s Supp.

Ex. A, Feb. 7, 2013, ECF No. 20-1 ("Miller Decl.") ¶ 4.  Helferich anticipates reliance on one

non-party witness who lives in California.  *See* Def.'s Second Supp. Br. 4.  That witness will

have to travel a significant distance whether this case is tried in Illinois or New York.  But, the

bulk of testimony from both sides—for example, on topics like claim construction—will likely

be provided by hired experts.  *See* Hr'g Tr.13-14.  The convenience of those witnesses "is of

little or no significance on a motion to transfer."  *Wibau Westdeutsche Industrie v. Am. Hoist &*

*Derrick Co.*, 293 F.Supp. 273, 275 (S.D.N.Y.1968) (internal citation and quotation marks

omitted).

In its litigation involving other New York companies, Helferich has proven its

willingness to depose witnesses at locations convenient to the witnesses.  *See* Def.'s Second

Supp. Br. 4 n.2; Curtin Decl. ¶ 8.  If JetBlue's New York-based employees are compelled to

testify at trial, any inconvenience can be lessened by allowing them to testify by video.  *See*

*Longo v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 169, 172 (E.D.N.Y. 1999) (availability of video

deposition or testimony reduces inconvenience to witness) (citing cases and secondary sources);

*see also* Fed. R. Civ. P. 32(a)(1) (allowing for all or part of a deposition to be used against a

party at trial).  And, if called to testify in person, JetBlue employees can be flown to the Northern

District of Illinois on the employer's aircraft.

JetBlue's employee-witnesses may experience a slight inconvenience if the case is tried

in Illinois; any expert witnesses will testify wherever they are paid to appear.  This consideration

only lightly weighs against transfer.

### b)     Convenience of Parties

While transfer is disfavored when it "merely shift[s] the inconvenience from one party to

the other," *Wilshire Credit Corp. v. Barrett Cap. Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y.

1997), it "'may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the nonmoving party's inconvenience.'" *See EasyWeb Innovations, LLC v. Facebook, Inc.*, No. 11-CV-5121, 2012 WL 3755410, at *8 (E.D.N.Y. Aug. 30, 2012) (quoting *Frame v. Whole Foods Mkt., Inc.*, No. 06-CV-7058, 2007 WL 2814613, at *6 (S.D.N.Y. Sept. 24, 2007)).

While JetBlue is headquartered in New York, it does substantial business in Illinois. *See* Compl. ¶ 1; *see also* JetBlue, Where We Jet, http://www.jetblue.com/wherewejet/ (listing O'Hare Airport in Chicago, Illinois as an airport where JetBlue flies its planes) (last visited Feb. 24, 2013). Helferich is registered to do business in Illinois and headquartered in Arizona. *See* Def. Mem. 3. It is currently engaged in litigation in Illinois over the same patents upon which JetBlue sues in New York. *See* Curtin Decl. ¶ 9. The same lawyers representing Helferich in the instant action represent Helferich in each of the five matters pending in the Northern District of Illinois. *Compare* Docket, *Helferich Patent Licensing, LLC v. New York Times Co.*, No. 10-CV-4387 (N.D. Ill.) and related cases *with* Docket, *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, No. 12-CV-5847 (E.D.N.Y.).

Transfer of the case to Illinois will "completely eliminate[]" any inconvenience faced by Helferich in this forum. It will only slightly—if at all—burden JetBlue. *See, e.g.*, *TSE v. Ventana Med. Sys., Inc.*, No. 97-CV-37, 1997 WL 811566, at *6 (D. Del. Nov. 25, 1997) ("For a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect."). This factor, like that of the first, only negligently weighs against transfer.

24

c)      **Location of Relevant Documents**

The location of relevant documents "is not a compelling consideration when records are easily portable." *KPMG Consulting Inc. v. LSQ II, LLC*, No. 01-CV-11422, 2002 WL 1543907, at *4 (S.D.N.Y. July 12, 2002) (internal quotation marks omitted). This is particularly true "in today's world of faxing, scanning, and emailing documents." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Larfarge N. Am., Inc.*, No. 98-CV-7137, 2002 WL 3160476, at *4 (E.D.N.Y. Nov. 16, 2002). *See also* John H. Beisner, *Discovering a Better Way:  The Need for Effective Civil Litig. Reform*, 60 Duke L. J. 547, 564 (2010) (describing an "exponential[] increase[]" in "the number of documents that companies create and retain in the normal course of business" and referring to an estimate that "99 percent of the world's information is now electronically generated").

JetBlue states that "virtually all [of its relevant] business records . . . will be produced by JetBlue employees working out of JetBlue's headquarters" in New York but it does not identify where its documents are stored. *See* Miller Decl. ¶ 5.  Helferich's documents are stored electronically. *See* Def.'s Second Supp. Br. 5.

This matter is entitled to no substantial weight.

d)      **Locus of Operative Facts**

In a patent case, "the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced." *Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 413 (S.D.N.Y. 2010).

There is no dispute that the location "where the infringing product was designed, developed, and produced" is in New York. *See* Def.'s Second Supp. Br. 5.  This factor weighs against transfer.

### e)      Availability of Compulsory Process

Neither party has identified a witness unwilling to testify in either the Eastern District of New York or the Northern District of Illinois.  The key testifying witnesses in this action are paid experts, who will testify wherever a trial is held.  This issue is of no moment.

### f)      Relative Means of Parties

No evidence of economic disparity between the parties has been offered.  *See* Def.'s Second Supp. Br. 56; Pl.'s Supp. 5.  As the parties concede, their finances are not a significant issue.  *C.f. Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693-94 (S.D.N.Y. 1994) (transfer denied where "[p]lainitffs are individuals who are suing a large corporation which possesses considerably greater financial assets").  This factor has no weight.

### g)      Familiarity with Governing Law

The governing law in this case is federal patent law.  "Since patent law is federal law, any district court may handle a patent case with equal skill."  *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 578 (S.D.N.Y. 1998).  This factor has no weight.

### h)      Plaintiff's Choice of Forum

A plaintiff's choice of forum usually weighs heavily in considering a motion to transfer venue.  It militates against transfer when operative facts occurred in the plaintiff's choice of forum and the plaintiff is domiciled there.  *See EasyWeb Innovations, LLC*, 2012 WL 3755410, at *4 (citing cases).

The locus of operative facts and JetBlue's place of domicile being New York, plaintiff's choice of forum is entitled to deference.  This factor weighs against transfer.

**i)**        **Trial Efficiency and the Interests of Justice**

Issues of judicial economy and avoiding inconsistent results in related actions can be "decisive," even when "most [other] factors would ordinarily sustain a plaintiff's choice of forum."  *Delta Air Lines, Inc. v. Assoc. of Flight Attendants, CWA*, 720 F. Supp. 2d 213, 219 (E.D.N.Y. 2010).  It is particularly desirable to have all issues related to the validity of a patent decided in one suit, in one forum and before one judge.  "It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer." *APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 49 F.Supp.2d 664, 668 (S.D.N.Y. 1999) (citing cases).  Identical causes of actions need not have been pled in both actions for transfer to be warranted; all that is required is that the two actions "hinge upon the same factual nuclei."  *Id*. (quoting *Dahl v. HEM Pharm. Corp.*, 867 F. Supp. 194, 197 (S.D.N.Y. 1994)) (internal quotation marks omitted).

This case and the actions currently pending in the Northern District of Illinois will hinge on identical issues.  The five cases involving Helferich in the Northern District of Illinois will consider the validity of all six of the patents sued-upon by JetBlue.  *See* Def.'s Second Supp. Br. 6.  Aspects of JetBlue's complaint repeats, almost word-for-word, allegations set out by one of the defendants sued in the Northern District of Illinois in a counterclaim against Helferich. *Compare* Compl. ¶¶ 53-54 *with Helferich Patent Licensing, LLC v. J.C. Penney Corp., Inc.*, No. 11-CV-9143 (N.D. Ill. Feb 3, 2012) ("Answer to Amended Complaint for Patent Infringement"), ECF No. 112.

The interrelatedness of the actions here and in the Northern District of Illinois decisively weighs in favor of transfer.  Helferich's motion to transfer its cases pending in the District of Arizona to the Northern District of Illinois was rejected because it was determined that the latter forum could not exercise personal jurisdiction over the defendants sued in Arizona. *See*

27

*Helferich Patent Licensing v. Suns Legacy Partners, LLC*, No. 11-CV-2304, at *5 (D. Ariz. Feb. 5, 2013) (order denying motion to transfer venue), ECF No. 164.  The presiding judge in the Arizona action, however, acknowledged that "[t]here would be obvious judicial economy and economy to the litigants if these consolidated cases were processed and tried together with substantively identical claims in the Northern District of Illinois."  *Id.*

Rulings on the validity of Helferich's portfolio of patents, which will affect commerce throughout the country, should be consistent and expeditiously reached.

Transfer of venue is warranted.

## VI.     Conclusion

Defendant's motion to dismiss is denied.  Its motion to transfer is granted.  The action shall be transferred to the Northern District of Illinois.

No costs or disbursements are ordered.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:    February 28, 2013
         Brooklyn, New York